## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

IN RE: DAVID DOUGLAS JONES.

                Debtor.

DAIMLER CHRYSLER FINANCIAL SERVICES AMERICAS LLC.,

                Appellant,

v.                                    CIVIL ACTION NO.  2:07-cv-00709

DAVID DOUGLAS JONES, et al.,

                Appellees.

## MEMORANDUM OPINION AND ORDER

       Pending before the court is an appeal by DaimlerChrysler challenging the decision of the United States Bankruptcy Court for the Southern District of West Virginia in the plaintiffs' adversary proceeding.  That proceeding concerned DaimlerChrysler's repossession of the plaintiffs' vehicle.  DaimlerChrysler claimed that it was entitled to repossess the vehicle because the plaintiffs were in default under the contract for sale once the debtor had filed for bankruptcy.  The bankruptcy court held that DaimlerChrysler violated W. Va. Code § 46A-2-106 by repossessing the vehicle without first giving the plaintiffs notice of a right to cure the default.  As a result, the bankruptcy court permanently enjoined DaimlerChrysler from repossessing the plaintiffs' vehicle on the basis of the bankruptcy filing.   For the reasons stated herein, the court **REVERSES** the bankruptcy court's order and **REMANDS** the case to the bankruptcy court for further proceedings in accordance with this opinion.

## I. Factual Background

This appeal arises from an adversary proceeding filed by the plaintiffs, David Douglas Jones and his wife Kirsten M. Jones, against DaimlerChrysler in the United States Bankruptcy Court for the Southern District of West Virginia, seeking declaratory relief, injunctive relief, and monetary damages for DaimlerChrysler's repossession of their vehicle. David Jones ("the debtor") previously had filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 24, 2006. Kirsten M. Jones did not file for bankruptcy but brought the adversary proceeding as the co-owner of the vehicle.

In filing for bankruptcy, the debtor also filed a statement of intention with respect to a contract for the purchase of a 2004 Kia Sedona ("the vehicle").[1]  The statement of intention indicated that the debtor would "Continue Payments" on the vehicle, but did not state whether the debtor intended to redeem the vehicle or reaffirm the debt as required by 11 U.S.C. § 521 (a)(2), (6) and § 362(h).  The debtor also failed to redeem the vehicle or to enter into a reaffirmation agreement with DaimlerChrysler within forty-five days of the first meeting of creditors.  Thereafter, DaimlerChrysler moved to confirm the termination of the automatic stay placed upon the property in the bankruptcy estate.  DaimlerChrysler was seeking confirmation that the stay was no longer in effect in order to enforce its security interest in the vehicle by repossessing it pursuant to the default-upon-bankruptcy clause contained in the contract. The clause provided that "You will be in default

---

[1] The plaintiffs entered into a West Virginia Simple Retail Installment contract for purchase of the vehicle on June 19, 2004.  The contract subsequently was assigned by the retailer to DaimlerChrysler for value and in good faith. Under the contract, the plaintiffs granted DaimlerChrysler a security interest in the vehicle, which was perfected by DaimlerChrysler and evidenced by the fact that the West Virginia Department of Transportation, Division of Motor Vehicles issued a certificate of title naming the plaintiffs as the owners of the vehicle and DaimlerChrysler as the first lien holder.

if . . . You file a bankruptcy petition or one is filed against You."[2]  After a hearing, and in the absence of any objection by the debtor, the bankruptcy judge ordered that the automatic stay was terminated on September 11, 2006, "owing to the Debtor's failure to redeem or reaffirm so as to permit DaimlerChrysler to proceed with any and all remedies available under state and/or federal law that are not inconsistent with [title 11] as to [the vehicle]."  Agreed Order Confirming Termination of the Automatic Stay at 1, *In re David Jones*, No. 06-20296 (Bankr. S.D. W. Va. Sept. 11, 2006).

On or about September 22, 2006, DaimlerChrysler repossessed the vehicle without giving the plaintiffs prior notice of a right to cure the default, even though the plaintiffs were current on the installment payments due under the contract and had maintained all necessary insurance on the vehicle.  The plaintiffs then commenced this adversary proceeding before the bankruptcy court on September 27, 2006.  In that proceeding, the plaintiffs filed a Motion for Expedited Relief on September 28, 2006, seeking injunctive relief prohibiting DaimlerChrysler from selling the vehicle and requiring its return.  After a hearing, the bankruptcy court granted the plaintiffs' request and the vehicle was returned to the plaintiffs' possession, where it remains.

The parties reached an agreement on May 1, 2007, to resolve the separate issue of damages, but left the issue of the right to repossess the vehicle for resolution by the bankruptcy court.  On August 17, 2007, the bankruptcy court rejected DaimlerChrysler's claim that it had no subject matter jurisdiction over the proceeding, finding that it had jurisdiction pursuant to 28 U.S.C. § 1334.  The court then proceeded to hold that "DaimlerChrysler had neither state nor federal bankruptcy law

---

[2] Under the contract, both the debtor and Ms. Jones are referred to "collectively [as] Buyer, You and Your."

-3-

rights to repossess the vehicle, without prior written notice of default and right to cure, upon the Debtor's failure to redeem or reaffirm the debt and when the Plaintiffs were current on the installment payments due under the Contract."  Order on Pls.' Compl. for Declaratory Relief, Injunctive Relief, and Monetary Damages at 3, *Jones v. DaimlerChrysler*, No. 06-02151 (Bankr. S.D. W. Va. Aug. 17, 2007).  Accordingly, the court ordered that DaimlerChrysler was "permanently enjoined from repossessing the Vehicle based upon a default under the Contract's default-upon-bankruptcy clause repossession."  *Id.*  This appeal followed.

## II. Standard of Review

The district court sits as an appellate court in bankruptcy under 28 U.S.C. § 158(a), and reviews findings of fact for clear error and conclusions of law *de novo*. *See* 28 U.S.C. § 158(a); *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (citing *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kelish)*, 258 F.3d 315, 319 (4th Cir. 2001)); *see also In re Gallagher*, 388 B.R. 694, 697 (W.D.N.C. 2008).   No findings of fact are at issue in this appeal, and the court will review the questions of law *de novo*.

## III. Discussion

DaimlerChrysler raises two issues on appeal, namely: (1) whether the bankruptcy court had subject matter jurisdiction to hear the claims presented in the adversary proceeding, given that the vehicle was no longer part of the bankruptcy estate and the proceeding concerned state law causes of action; and (2) whether DaimlerChrysler had the right under the Bankruptcy Code and applicable state law to repossess the vehicle, without prior notice of a right to cure, upon the debtor's failure to redeem or reaffirm.

### A. The Bankruptcy Court Possessed Subject Matter Jurisdiction Over The Adversary Proceeding

Because DaimlerChrysler is challenging the bankruptcy court's subject matter jurisdiction, a potentially dispositive issue, I address it first. The bankruptcy court's jurisdiction in this matter, and in all bankruptcy proceedings, is derived from the district court. *See* 28 U.S.C. § 157(a), (b)(1). The district courts have "original and exclusive jurisdiction of all cases under title 11, " and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 157, 1334 (a), (b); *see also* 9 Am. Jur. 2d *Bankruptcy* §§ 706-10. The underlying bankruptcy case was referred to the Bankruptcy Court for the Southern District of West Virginia, where the adversary proceeding at issue also originated.[3] DaimlerChrysler argues that the bankruptcy court lacked jurisdiction because the adversary proceeding was not a core bankruptcy proceeding, was based entirely on state law causes of action that had no impact on the administration of the bankruptcy estate, and did not arise under, arise in or relate to cases under title 11. The plaintiffs argue, by contrast, that the adversary proceeding was a core proceeding that satisfied all three statutory grounds of jurisdiction.

The bankruptcy court's jurisdiction over a nonbankruptcy civil proceeding, such as an adversary proceeding, stems from one of three statutory avenues, namely, that the civil proceeding: (1) "arises under" title 11; (2) "arises in" title 11; (3) or is "related to" cases under title 11. *See* 28 U.S.C. § 1334 (a), (b). More specifically, a civil proceeding "arises under" title 11 (the Bankruptcy Code) when the cause of action or right is one that is created by the Code. *See In re Aheong*, 276

---

[3] All cases under title 11 and all proceedings arising under title 11, or arising in or related to a case under title 11 routinely are referred by the court to the bankruptcy court in this district for disposition. *See* S.D. W. Va. Local Rules 83.13.

B.R. 233, 242-46 (B.A.P. 9th Cir. 2002); *see also* 1 *Collier on Bankruptcy* ¶ 3.01(4)(c)(I) (Alan N.

Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).  A civil proceeding "arises in" title 11 if it

"is not based on any right expressly created by Title 11, but nevertheless, would have no existence

outside of the bankruptcy." *Valley Historic Ltd. P'ship*, 486 F.3d at 835 (citations omitted; internal

quotation marks omitted). Finally, a civil proceeding is "related to" a case under title 11 when "the

outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy. Therefore, an action is related to bankruptcy if the outcome could alter the debtor's

rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way

impacts upon the handling and administration of the bankruptcy estate." *Id.* at 836; *see also In re*

*Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 830 (Bankr. S.D. Tex. 2006).

To resolve the jurisdictional challenge, the following additional facts are necessary.  The

plaintiffs filed the instant adversary proceeding in response to the bankruptcy court's holding that

the debtor had not acted to retain the vehicle under 11 U.S.C. §§ 521(a)(2), 362(h), and 521(a)(6).

Upon the court's ruling, DaimlerChrysler repossessed the surrendered vehicle.  The plaintiffs

brought the adversary proceeding in an attempt to retain the vehicle, and asked the bankruptcy court

to find, *inter alia*, that the 2005 amendments to title 11 had not superceded a preexisting common

law doctrine adopted by the Fourth Circuit, the so-called "ride-through" option. The "ride-through"

option permitted a debtor to retain property even though he had failed to redeem or reaffirm,

provided that the debtor remained current on the payments due on a secured debt.  *Home Owners*

*Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345, 347-49 (4th Cir. 1992).  As a

result, the debtor could retain the property and the creditor could not foreclose upon or repossess it.

*See id.*; *In re Donald*, 343 B.R. 524, 530-31 (Bankr. E.D.N.C. 2006).  In the adversary proceeding,

the plaintiffs asked the bankruptcy court to conduct a two-part inquiry, namely, (1) whether the

"ride-through" option permitted the debtor to retain the vehicle when he indicated that he intended

to continue the payments on the contract  or whether the debtor surrendered the vehicle due to his

failure to redeem or reaffirm, leaving the creditor free to take whatever action permitted by

applicable nonbankruptcy law; and (2) if the "ride-through" option no longer existed after the

bankruptcy amendments, whether DaimlerChrysler violated state law by repossessing the vehicle

without providing the plaintiffs prior notice of a right to cure the default when the plaintiffs were

current on the installment payments due under the contract.

I conclude that the bankruptcy court had jurisdiction over the adversary proceeding pursuant

to 28 U.S.C. § 1334 because that proceeding satisfied all three grounds for jurisdiction.[4]  First, I

**FIND** that the adversary proceeding "arose under" title 11.  "To determine whether a proceeding

'arises under' title 11, [a court applies] the same test used for deciding whether a civil action

presents a federal question under 28 U.S.C. § 1331."  *In re Poplar Run Five Ltd. P'ship*, 192 B.R.

848, 855 (Bankr. E.D. Va. 1995); *see also* 28 U.S.C. § 1331 (using same "arising under" language).

Under that test, "'arising under' jurisdiction in bankruptcy extends 'only to those cases in which a

well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action

or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of

federal [bankruptcy] law."  *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463

---

[4]  Although only one ground for jurisdiction is necessary for the bankruptcy court to have
valid subject matter jurisdiction, I will address all three potential grounds for jurisdiction because
they are each disputed by DaimlerChrysler and because the bankruptcy court did not specify under
what particular ground or grounds it possessed jurisdiction.

U.S. 1, 27-28 (1983)).  A "well-pleaded complaint" makes it plain on the face of the complaint that jurisdiction exists through a federal question, or in this case, a bankruptcy question.  *Id.*

In their complaint, the plaintiffs claimed, *inter alia*, that they were current in their payments on the vehicle pursuant to the contract, that the decision by the Fourth Circuit in the case of *In re Belanger* (which established the "ride-through" option in this jurisdiction) had not been altered by the bankruptcy amendments, and that the matter was a core proceeding that asked the court to interpret bankruptcy law.  Accordingly, I **FIND** that, on its face, the complaint established that the adversary proceeding "arose under" title 11 because the bankruptcy court was asked to resolve substantial questions of bankruptcy law in addition to the plaintiffs' state law claims.  *See id; see also In re Aheong*, 276 B.R. at 242-46; *cf. In re Poplar Run Five Ltd. P'ship*, 192 B.R. at 855 (finding that proceeding did not meet "arising under" test because the complaint purporting to invoke jurisdiction alleged claims were premised on state law only).

I also **FIND** that the bankruptcy court possessed "arising in" jurisdiction over the adversary proceeding because it was asked to determine if the "ride-through" option was still applicable after the 2005 amendments to the Code.  This question plainly required the bankruptcy court to grapple at some length with issues of bankruptcy law, as evidenced by its lengthy discussion in its February 28, 2007, order granting the plaintiffs' request for declaratory and injunctive relief, upon which reasoning it relied in issuing the order now on appeal.  The presence of a substantial issue concerning bankruptcy law doctrine, even in addition to state law issues, brought the adversary proceeding within the bankruptcy court's "arising in" jurisdiction.  *See In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 428 (Bankr. S.D.N.Y. 2004) (finding that the adversary proceeding triggered "arising in" jurisdiction because it was "replete with issues of bankruptcy law, all or substantially

-8-

all of which would not have arisen outside of the . . . bankruptcy."). Moreover, because the

adversary proceeding arose from the bankruptcy court's order confirming termination of the

automatic stay as to the vehicle, the issues therein would have had no practical existence but for the

bankruptcy. *See Valley Historic Ltd. P'ship*, 486 F.3d at 835.

Finally, I **FIND** that the bankruptcy court also properly exercised "related to" jurisdiction

over the adversary proceeding because it impacted on "the rights, liabilities, options or freedom of

action" of the plaintiffs (and therefore, the debtor) to retain and enjoy the use of the vehicle. *Id.*

Additionally, if the "ride-through" option were to permit the plaintiffs to continue to make payments

upon the vehicle, those payments would affect the plaintiffs' (and therefore the debtor's) stream of

income and/or cash flow, thereby conceivably impacting upon the bankruptcy estate if the ongoing

payments reduced the assets available for distribution to creditors of the estate. *Cf. In re NWFX,*

*Inc.*, 881 F.2d 530, 532 (8th Cir. 1989) (holding that "related to jurisdiction" existed when the action

would impact the assets of the bankruptcy estate and the funds available for distribution); *In re*

*Asousa P'ship*, 264 B.R. 376, 382-83 (Bankr. E.D. Pa. 2001) (finding "related to" jurisdiction where

the adversary proceeding could deprive the debtor of a source of income, which would impact the

handling of the bankruptcy estate).

Having determined that the bankruptcy court had subject matter jurisdiction over the

adversary proceeding, I now turn to the second step in the jurisdictional analysis, that is, whether

the bankruptcy court had the authority to issue a final order, which it purported to do. *See In re*

*Doctors Hosp. 1997, L.P.*, 351 B.R. at 833-34. DaimlerChrysler claims that the bankruptcy court

did not have jurisdiction to issue a final order because the adversary proceeding did not qualify as

a so-called "core proceeding" under 28 U.S.C. §157(b). A bankruptcy judge may hear and make

a final determination as to all core proceedings under title 11, but only may submit proposed

findings of fact and conclusions of law in a "non-core proceeding" that is otherwise related to a case

under title 11.  The proposed findings and conclusions of law are then submitted to the district court

to be reviewed *de novo* unless the parties involved in the proceeding give their consent to be bound

by the bankruptcy court.  28 U.S.C. § 157(b), (c); *see also Marshall v. Marshall*, 547 U.S. 293, 302-

03 (2006); *In re Mullarkey*, 536 F.3d 215, 220-21 (3d Cir. 2008).

I note that "[s]imply because the proceeding presents questions of state law does not

necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the

bankruptcy courts."  *In re Poplar Run Five Ltd. P'ship*, 192 B.R. at 856-57.  As a proceeding

"arising in" as well as "arising under" a bankruptcy case, I **FIND** that the adversary proceeding

qualified as a core proceeding for which the bankruptcy court was authorized to enter a final order

or judgment under 28 U.S.C. § 157(b).  *See Marshall*, 547 U.S. at 302-03; *In re Mullarkey*, 536 F.3d

220-21; *In re TJN, Inc.,* 207 B.R. 502, 508 (D.S.C. 1996).

### B. The "Ride-Through" Option

The bankruptcy law issue that gave rise to the bankruptcy court's jurisdiction, and which is

now before this court on its merits, is whether the amendments to title 11, that is, the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat.

23, eliminated the "ride-through" option and effectively overruled *In re Belanger*.  The bankruptcy

court implied that BAPCPA might not have overruled *Belanger* and relied upon *In re Donald* to

suggest that the "ride-through" option may still be viable because, from a practical standpoint,

debtors might continue to make payments on secured personal property debts without reaffirming

and that creditors might continue to accept those payments.  *See* Order Granting Pls' Request for

-10-

Declaratory and Injunctive Relief at 4-5, *Jones v. DaimlerChrysler*, No. 06-02151 (Bankr. S.D. W.

Va. Feb. 28, 2007).  Moreover, although the bankruptcy court did not definitively hold that the

"ride-through" option survived BAPCPA, it did find that, even if the "ride-through" option had been

eliminated, that did not automatically authorize DaimlerChrysler to repossess the vehicle. *Id.* at 5-6.

On appeal, DaimlerChrysler claims that the "ride-through" option is no longer a viable

alternative for debtors after BAPCPA, and, as a result, that the debtor's failure to redeem or reaffirm

permitted DaimlerChrysler to proceed in accordance with its contractual rights under applicable

nonbankruptcy law.  The plaintiffs counter, however, that BAPCPA did not eliminate the "ride-

through" option because the statutory language and policy behind the doctrine have remained

materially unchanged.  I agree with DaimlerChrysler that the "ride-through" option was eliminated

by BAPCPA, at least insofar as it would apply to this debtor who failed to indicate his intention to

redeem or reaffirm or to enter into an actual reaffirmation agreement.

### 1. The "Ride-Through" Before BAPCPA

As briefly stated earlier, the "ride-through" option permitted a debtor to retain property even

though he had failed to redeem or reaffirm, provided that the debtor remained current on the

payments due under a secured debt.  *See In re Belanger*, 962 F.2d at 347-49.  In holding that then

11 U.S.C. § 512(2)'s provisions for redemption or reaffirmation were not the only options available

to a debtor who wished to retain property, the *Belanger* court examined the text of then § 521(2),

which provided in relevant part that:

> (2) if an individual debtor's schedule of assets and liabilities includes consumer
> debts which are secured by property of the estate-
>
>> (A) within thirty days after the date of the filing of a petition under Chapter
>> 7 of this title or on or before the date of the meeting of creditors, whichever
>> is earlier, or within such additional time as the court, for cause, within such

-11-

period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, *if applicable*, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

*Id.* at 346-47 (quoting 11 U.S.C. § 521(2) (1984) (emphasis added)); *see also In re Boodrow*, 126 F.3d 43, 46-50 (2d Cir. 1997). In analyzing this language, the *Belanger* court affirmed the conclusion of the bankruptcy and district courts that the phrase "if applicable" in then § 521(2)(A) did not limit a debtor's options to those specifically listed in that section and that nothing in the larger code made those options exclusive. *See In re Belanger*, 962 F.2d at 347. Accordingly, the court held that if the options to redeem or reaffirm were not applicable, the debtor need not choose one of those options, but instead, if he was current on payments, the debtor could choose to retain the property and continue to pay under the contract. *Id.*; *see also In re Boodrow*, 126 F.2d at 51 (examining the legislative history of then § 521(2) and holding that it "serve[d] primarily a notice function, not necessarily to restrict the substantive options available to a debtor who wishes to retain collateral securing a debt."). The property would thus "ride-through" the bankruptcy unaffected. *See In re Dehon, Inc.*, 325 B.R. 546, 560-61 (Bankr. D. Mass. 2006).

The *Belanger* court's conclusion was supported by the so-called "savings clause," that is, then § 521(2)(C), which preserved the debtor's and trustee's rights with regard to the collateral under the Code. *In re Belanger*, 962 F.2d at 347. That clause was significant because, before the

enactment of then § 521(2), one bankruptcy court had held that a debtor who was not in default on a loan was entitled to retain the collateral securing the loan as long as he remained current on loan payments.  *See id*. (citing *In re Ballance*, 33 B.R. 89 (Bankr. E.D. Va. 1983))*; see also In re Price*, 370 F.3d 362 (3d Cir. 2004) (setting out provisions of the Code that permit a debtor to retain property by continuing payments, moving to avoid liens, and converting the chapter 7 proceeding to a chapter 13 proceeding).   Section 521(2) therefore affected only procedure, and not the substantive rights of the debtor.  *In re Belanger*, 962 F.2d at 347 (citing, *inter alia*, 3 *Collier on Bankruptcy* § 521.09A, at 521-49 (Lawrence P. King, ed., 15th ed. 1991)).  Finally, in adopting the "ride-through" option, the *Belanger* court concluded that a default-upon-bankruptcy clause (also known as an *ipso facto* clause) in an installment loan contract was unenforceable as a matter of law. *Id*. at 348.

The "ride-through" option was developed in light of the unique position of a debtor in bankruptcy and the practical considerations attendant thereto:

> [A] person who has filed bankruptcy is unlikely to be able to redeem the collateral in a lump sum . . . .  If the debtor seeks to retain the collateral, . . . reaffirmation requires the consent of the creditor . . . .  This enables the creditor to compel the debtor either to meet the creditor's terms of reaffirmation or to surrender the property.

*In re Belanger*, 962 F.3d at 348.  Similarly, the *Boodrow* court emphasized the "fresh start" policy underlying the bankruptcy code and found that the "ride-through" option was consistent with that policy because:

> if the options listed in [then] § 521(2) were exclusive, a debtor's only real choices would be either to reaffirm the debt under whatever new terms the creditor requires [due to the fact that the debtor is unlikely to be able to redeem the collateral in a lump sum] or to surrender the property.  Because reaffirmation involves negotiation between parties with unequal bargaining power and requires voluntary agreement by both debtor and creditor, it gives a creditor an effective

-13-

veto on the 'fresh start.'  Yet, surrender may deprive a debtor of much needed
property . . . .

*In re Boodrow*, 126 F.3d at 51.

The circuit courts were split over the question of the existence of the "ride-through" option

before BAPCPA.  *See, e.g., Price v. Del. State Police Fed. Credit Union (In re Price)*, 370 F.3d 362,

375 (3d Cir. 2004) (adopting the "ride-through" option);  *McClellan Fed. Credit Union v. Parker*

*(In re Parker)*, 139 F.3d 668, 672-73 (9th Cir. 1998) (same); *In re Boodrow*, 126 F.3d at 49-53

(same); *In re Belanger*, 962 F.2d at 347 (same); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543,

1547 (10th Cir. 1989) (same).  *But see*, *e.g., Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 847-

49 (1st Cir. 1998) (finding no support for the "ride-through" option in the Code); *Johnson v. Sun*

*Fin. Co. (In re Johnson)*, 89 F.3d 249, 252 (5th Cir. 1996) (same); *Taylor v. AGE Fed. Credit Union*

*(In re Taylor)*, 3 F.3d 1512, 1516 (11th Cir. 1993) (same); *In re Edwards*, 901 F.2d 1383, 1385-87

(7th Cir. 1990) (same); *In re Bell*, 700 F.2d 1053, 1056-57 (6th Cir. 1983) (same).  Even before the

passage of BAPCPA, the "ride-through" option has been called "the most controversial consumer

credit issue under the Code."  Philip R. Principe, *Did BAPCPA Eliminate the "Fourth Option" for*

*Individual Debtors' Secured Personal Property?*, 24-Oct Am. Bankr. Inst. J. 6 (2005) (internal

quotation marks omitted).

## 2. The "Ride-Through" Option After BAPCPA Was Eliminated Insofar As It Applies To This Case

The controversy has intensified after BAPCPA, with courts questioning whether the "ride-

through" option could have survived the changes to the Code.  There continues to be a split of

authority, and the Fourth Circuit has not  addressed the issue.  *Compare* Principe*, supra* (arguing

that the "ride-through" or "fourth option" did not survive BAPCPA), *with* Christopher H. Hogan,

-14-

Note, *Will the Ride-Through Ride Again?*, 108 Colum. L. Rev. 882 (2008) (arguing that the "ride-through" option was unchanged by BAPCPA).  DaimlerChrysler argues that the "ride-through" option was eliminated when BAPCPA added or amended the following provisions: 11 U.S.C. §§ 521(a)(2), 361(h)(1), 521(a)(6), and 521(d).  I will examine each of these provisions in turn.

As a result of BAPCPA, § 521(2) became § 521(a)(2), which, as amended, provides:

> (a) The debtor shall-

>> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate–

>>> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

>>> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

>>> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h)*.

11 U.S.C. § 521(a)(2) (emphasis added); *see also* Mark S. Stern, *Reaffirmation Under BAPCPA: Did Ride-Through Survive?*, 1 Norton Bankr. Law Adviser 3 (2007) (summarizing and commenting upon statutory language).  The revised savings clause, with the addition of the phrase "except as provided

in section 362(h)," thus "incorporates an exception, as set forth in the new § 362(h), to a general rule

that nothing in § 521(a)(2)(A) and (B) changes rights with respect to collateral." *In re Craker*, 337

B.R. 549, 550 (Bankr. M.D.N.C. 2006).   Because "[t]he apparent purpose of § 362(h) is to

encourage debtor compliance with section 521, and the statutes should be construed together in

order to give effect to both," I turn to the language of  § 362(h).  *In re Donald*, 343 B.R. at 534

(citation and internal quotation marks omitted).

Section 362(h), which was added to the Code by BAPCPA, provides in relevant part:

(h)(1) In a case in which the debtor is an individual, the stay provided by subsection
(a) is terminated with respect to personal property of the estate or of the debtor
securing in whole or in part a claim, or subject to an unexpired lease, and such
personal property shall no longer be property of the estate if the debtor fails within
the applicable time set by section 521(a)(2)--

(A) to file timely any statement of intention required under section 521(a)(2)
with respect to such personal property or to indicate in such statement that
the debtor will either surrender such personal property or retain it and, if
retaining such personal property, either redeem such personal property
pursuant to section 722, enter into an agreement of the kind specified in
section 524(c) applicable to the debt secured by such personal property, or
assume such unexpired lease pursuant to section 365(p) if the trustee does
not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be
amended before expiration of the period for taking action, unless such
statement specifies the debtor's intention to reaffirm such debt on the
original contract terms and the creditor refuses to agree to the reaffirmation
on such terms.

11 U.S.C. § 362(h)(1); *see also* Stern, *supra.* The statute explicitly requires that a failure to redeem

or reaffirm within the applicable time period terminates the automatic stay with respect to personal

property of the estate or the debtor and the property will no longer be a part of the estate.  *See* 11

U.S.C. § 362(h)(1); *In re Donald*, 343 B.R. at 534.   "Thus, while § 521(a)(2)(A) and (B) do not

generally alter a debtor's or trustee's rights with regard to personal property that serves as collateral,

-16-

§ 362(h)(1)(A) provides for an exception in which, under certain circumstances, the stay is terminated." *In re Craker*, 337 B.R. at 551. Section 362(h) "significantly changes" the pre-BAPCPA analysis because the debtor must now choose one of only three options: (1) surrender, (2) retention through redemption or (3) retention through reaffirmation of the debt. *In re Rowe*, 342 B.R. 341, 345 (Bankr. D. Kan. 2006). Section 362(h) therefore eliminates the so-called "fourth option," that is, the "ride-through" option previously available to debtors. *Id.* at 345-46.

As the *Donald* court observed, however, "[t]ermination of the stay does not mean that the 'ride-through' option is eliminated [by the BAPCPA amendments to § 521(a)(2) and § 362(h) alone]." *Id.* (quoting *In re Belanger*, 962 F.2d at 348). The *Donald* court found that the BAPCPA amendment to § 521(a)(6) (with the addition of § 521(d) discussed later in this opinion) delivers a fatal blow to the "ride-through" option. *See id.* at 534-35.

Section 521(a)(6) provides that a debtor shall:

(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341 (a), either—

(A) enters into an agreement with the creditor pursuant to section 524 (c) with respect to the claim secured by such property; or

(B) redeems such property from the security interest pursuant to section 722.

If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362 (a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.

-17-

11 U.S.C. § 521(a)(6).  Section 521(a)(6) therefore requires an individual debtor in a chapter 7 case who wishes to retain personal property either to redeem the property or to reaffirm the debt within a specified time period.  If a debtor fails to timely redeem or reaffirm, the automatic stay is terminated and the creditor may take whatever action is permitted by applicable nonbankruptcy law.  *See id.*; *In re Donald*, 343 B.R. at 535; Stern, *supra*.

I **FIND** that the "ride-through" option was terminated by the BAPCPA amendments as applied to the debtor in this case because he failed to choose one of the three statutory options.  The BAPCPA changes to the Code require the debtor to redeem, reaffirm or surrender the property, or the automatic stay will be lifted and the property will not be part of the estate.  *See, e.g., In re Dumont*, 383 B.R. 481, 485 (B.A.P. 9th Cir. 2008); *In re McFall*, 356 B.R. 674, 675-77 (Bankr. N.D. Ohio 2006); *In re Ruona*, 353 B.R. 688, 690 (Bankr. D.N.M. 2006); *In re Steinhaus*, 349 B.R. 694, 703 (Bankr. D. Idaho 2006); *In re Anderson*, 348 B.R. 652, 656-59 (Bankr. D. Del. 2006); *In re Norton*, 347 B.R. 291, 298-99 (Bankr. E.D. Tenn. 2006);  *In re Boring,* 346 B.R. 178, 179-81 (Bankr. N.D. W. Va. 2006); *In re Donald*, 343 B.R. at 539-40; *In re Rowe*, 342 B.R. at 343; *In re Craker*, 337 B.R. 549; *cf. In re Caraballo*, 386 B.R. 398, 402 (Bankr. D. Conn. 2008) (concluding that BAPCPA eliminated the "ride-through" option as to personal property but not as to real property).

The cases holding that the "ride-through" option is still viable after BAPCPA are limited in their applicability.  In those cases, the debtor had largely complied with the requirements of § 521(a)(2) or § 362(h) either by filing a statement of intention indicating that he or she would redeem or reaffirm, or by actually entering into a reaffirmation agreement that the bankruptcy court later refused to approve because it would constitute an undue hardship on the debtor.  *See In re Baker*, 390 B.R. 524, 527-30 (Bankr. D. Del. 2008); *In re Chim*, 381 B.R. 191, 198 (Bankr. D. Md. 2008); *In re*

-18-

*Moustafi*, 371 B.R. 434, 438-39 (Bankr. D. Ariz. 2007); *In re Husain*, 364 B.R. 211, 218-19 (Bankr.

E.D. Va. 2007); *In re Blakeley*, 363 B.R. 225, 228, 232 (Bankr. D. Utah 2007).  These cases held that

substantial compliance with § 521(a)(2), § 521(a)(6), and § 362(h) was sufficient.  *See, e.g., In re*

*Blakeley*, 363 B.R. at 230-32 ("Because this Debtor has fully complied with the requirements under

§ 521(a)(2), § 521(a)(6), § 521(d), and § 362(h), the remedies contained in each of the subsections

are not triggered").  The fact that the bankruptcy court thereafter refused to approve the reaffirmation

agreement in those cases did not alter the fact of the debtor's substantial compliance.  *See In re*

*Blakeley*, 363 B.R. at 232.  The debtor's compliance is essential to the possibility of carving out a

continued existence of the "ride through" option as a so-called "backdoor ride-through."  In this case,

the debtor did not choose one of the three statutory options in his statement of intention nor did he

enter into a reaffirmation agreement.  I therefore need not decide whether BAPCPA eliminated the

"ride-through" option altogether or whether the limited "ride-through" option (or so-called "backdoor

ride through") survived BAPCPA because it is clear that this debtor did *not* comply with § 521 and

§ 362(h) in any manner.[5]

My conclusion that BAPCPA eliminated the "ride-through" option, at least insofar as applied

to this debtor who failed to redeem, reaffirm, or surrender, is premised upon the fact that the

---

[5] *See generally* Hogan, *supra*, for a summary of what the author termed the "backdoor ride-through" and for an argument that the language of the Code, as well as policy considerations, mandates the conclusion that the "ride-through" option survived BAPCPA.

In finding that BAPCPA, and the language of the Code, have eliminated the "ride-through" option, at least as it relates to the debtor in this case who obviously failed to comply with § 521 and § 362(h), I am mindful of, and not unsympathetic to, the plight of such debtors who depend upon their personal vehicles for transportation and for employment as they try to get back on their financial feet after bankruptcy.  *See* Hogan, *supra*, at 907, 922.  I am not free, however, to find the existence of the "ride-through" option in the Code as it applies to this debtor in the face of the changes enacted by BAPCPA.

ambiguity that existed pre-BAPCPA has been eliminated by the inclusion of consequences stemming

from a debtor's failure to formally redeem or reaffirm in a statement of intention.  More specifically,

the source of the ambiguity in the pre-BAPCPA meaning of then § 521(2) was:

> the counterintuitive fact that this statute mandates the filing of the statement of
> intention but provides no specific consequences for the debtor's failure to comply
> with that statute's time requirements or for the debtor's failure to enumerate in the
> statement of intention whether the debtor intends to retain the collateral and affirm
> the underlying debt, redeem the collateral or surrender the collateral.  This lack of
> consequence, coupled with language in § 521(2)(C) [the savings clause], provided
> room for the interpretation that the fourth option was viable.

Principe, *supra*.  This ambiguity no longer exists because after BAPCPA the consequences of a

failure to comply with the relevant sections is clear.

I therefore conclude that, in the absence of the "ride-through" option, when the debtor failed

to timely choose one of the three available statutory options, the automatic stay was terminated and

the vehicle was no longer part of the bankruptcy estate.  I **FIND** that the debtor was not entitled to

retain the vehicle pursuant to bankruptcy law, and that DaimlerChrysler was free to take whatever

action was permitted under nonbankruptcy law.  I now must determine what actions DamilerChrysler

was permitted to take once the automatic stay was terminated.

### C. The Contract's *Ipso Facto* Clause And Applicable Nonbankruptcy State Law

DaimlerChrysler argues that the contract's default-upon-bankruptcy clause, or *ipso facto*

clause, was triggered in this case and gave it authority to repossess the vehicle without giving the

plaintiffs prior notice of a right to cure the default.  DaimlerChrysler acknowledges that the *Belanger*

court stated that an *ipso facto* clause was unenforceable, but argues that § 521(d) has carved out an

exception to that rule.  Finally, DaimlerChrysler maintains that it was within its contractual rights to

repossess the vehicle without notice.  The plaintiffs, on the other hand, contend that: (1) the *Belanger*

court's prohibition of the enforcement of a default-upon-bankruptcy clause still applies; (2) even if

that prohibition is no longer in effect, the prohibition against *ipso facto* clauses was still good law

when the contract was signed, making that clause unenforceable and therefore unconscionable; (3)

any default under the clause was waived and/or estoppel bars a claim of defect because

DaimlerChrysler accepted all post-petition payments under the contract; and (4) even if the plaintiffs

were in default under the contract, West Virginia state law did not permit DaimlerChrysler to

accelerate the debt or repossess the vehicle without providing the plaintiffs with prior notice of a right

to cure the default.

### 1. *Ipso Facto* Clauses Are Valid After BAPCPA When The Debtor Does Not Comply With § 521(a)(6) or  § 362(h)

First, DaimlerChrysler argues that the *ipso facto* clause in the contract is enforceable under

the Code because BAPCPA overruled the old prohibition against such clauses as stated by the

*Belanger* court.  *See In re Belanger*, 962 F.2d at 348.  The *Donald* court concluded, and I concur, that

the addition of § 521(d) in the BAPCPA amendments significantly changed the *Belanger* court's

prohibition against an *ipso facto* clause.   *See In re Donald*, 343 B.R. at 538.  Section 521(d) now

permits the enforcement of *ipso facto* clauses in consumer loan agreements that are secured by

personal property if the debtor fails to comply with the provisions of § 521(a)(6) or § 362(h).  *Id.*; *see*

*also In re Husain*, 364 B.R. at 217; *In re Anderson*, 348 B.R. at 659.

Specifically, § 521(d) provides:

> If the debtor fails timely to take the action specified in subsection (a)(6) of this
> section, or in paragraphs (1) and (2) of section 362(h), with respect to property
> which a lessor or bailor owns and has leased, rented, or bailed to the debtor or as to
> which a creditor holds a security interest not otherwise voidable under section
> 522(f), 544, 545, 547, 548, or 549, nothing in this title shall prevent or limit the
> operation of a provision in the underlying lease or agreement that has the effect of
> placing the debtor in default under such lease or agreement by reason of the

occurrence, pendency, or existence of a proceeding under this title or the insolvency
of the debtor. Nothing in this subsection shall be deemed to justify limiting such a
provision in any other circumstance.

11 U.S.C. § 521(d).  The failure of a debtor to redeem the property or reaffirm the debt therefore

triggers the application of § 521(d).

The contract's default-upon-bankruptcy clause is an *ipso facto* clause.  That is, it is a

contractual provision that declares a debtor (or in this case, the plaintiffs) in default under the contract

if he or she becomes a debtor in a bankruptcy case, regardless of whether the debtor continues to

remain current in payments.  *See In re Husain*, 364 B.R. 211, 217 n.7 (Bankr. E.D. Va. 2007); *In re*

*Steinhaus*, 349 B.R. 694, 709 (Bankr. D. Idaho 2006).  As stated earlier, the contract provided in

relevant part: "You will be in default if . . . You file a bankruptcy petition or one is filed against

You."  It is clear that BAPCPA has carved out a limited exception to the prohibition against *ipso*

*facto* clauses, and so the clause in this case may be given effect because § 521(d) was triggered by

the debtor's failure to comply with § 521(a)(6) or § 326(h).  *See In re Dumont*, 383 B.R. at 488 &

n.12.

Even after the BAPCPA changes, however, the Code merely provides that the stay is

terminated and the creditor thereafter is permitted to take whatever action under state law, or other

applicable nonbankruptcy law.  *See* 11 U.S.C. §§ 362(h), 521(a)(6); *In re Craker*, 337 B.R. at 551

n.2.  The bankruptcy court is not itself empowered by the code to order turnover of the vehicle.  *See*

*In re Rowe*, 342 B.R. at 349-50 ("The result of removal of property from the estate is revesting of the

property with the debtor.  The creditor's right to foreclose on the collateral is controlled by the

security agreement and state law."); *see also In re Donald*, 343 B.R. at 538.  I therefore turn to the

contract and to applicable state law to determine whether, once the automatic stay was terminated,

the plaintiffs were in default under the *ipso facto* clause which would allow repossession in this case and whether DaimlerChrysler could repossess the vehicle without providing prior notice to the plaintiffs of a right to cure.  *See In re Anderson*, 348 B.R. at 659-60 (citing *In re Rowe*, 342 B.R. at 351).

### 2. Whether DamilerChrysler Violated State Law In Repossessing The Vehicle

### a. Whether W. Va. Code § 46A-2-121 Renders The *Ipso Facto* Clause Unconscionable

The plaintiffs first claim that the *ipso facto* clause is invalid under W. Va. Code § 46A-2-121, which prohibits unconscionable terms in consumer contracts.  Specifically, the plaintiffs argue that, because pre-BAPCPA *ipso facto* clauses were unenforceable as stated by *Belanger*, the clause in this case is unenforceable, and unconscionable, because this contract was entered into some five months before the BAPCPA changes went into effect.  Because the plaintiffs are raising this argument for the first time on appeal, however, it is waived.  *See In re Lane* , 991 F.2d at 107; *In re Endicott*, 157 B.R. at 260-61.

### b. DaimlerChrysler's Acceptance Of Continued Payments Under The Contract Did Not Defeat Its Claim Of Defect By Waiver Or Give Rise To The Doctrine Of Estoppel

The plaintiffs also argue that any default under the *ipso facto* clause is waived and/or that estoppel barred DaimlerChrysler from claiming a default because it accepted all of the plaintiffs' post-petition payments.  DaimlerChrysler counters that it was entitled to accept payments under the contract until the debtor's statutory time period to redeem or reaffirm had expired (that is, 45 days after the meeting of creditors pursuant to § 521(a)(6)).  I agree.

The meeting of creditors was held on June 16, 2006, and under § 521(a)(6), the debtor had until July 31, 2006 (45 days later) to file a statement of intention choosing one of the three options established by BAPCPA.  DaimlerChrysler asserts, and the plaintiffs do not dispute, that

-23-

DaimlerChrysler received only one payment made after that time period had expired, namely, a payment on August 28, 2006.  That payment was made to DaimlerChrysler's automated phone payment system, and was made prior to the bankruptcy court's September 11, 2006, order that confirmed that the automatic stay had been lifted.

11 U.S.C. § 524(f) provides that "[n]othing contained in subsection (c) or (d) of this subsection [governing reaffirmation agreements] prevents a debtor from voluntarily repaying any debt."  Furthermore, § 521(*l*) provides in relevant part that:

> (*l*) Notwithstanding any other provision of this title the following shall apply:
>
>> (1) A creditor may accept payments from a debtor before and after the filing of [a reaffirmation agreement]
>>
>> (2) A creditor may accept payments from a debtor under such agreement that the creditor believes in good faith to be effective.

11 U.S.C. § 521(*l*).  Accordingly, I **FIND** that, until the time had expired for the debtor to choose to reaffirm or redeem, and until the court had declared that the vehicle was no longer part of the bankruptcy estate, DaimlerChrysler could accept payments from the debtor.  It was not clear that the plaintiffs were in default under the contract until such time expired.

**c. DaimlerChrysler Could Repossess The Vehicle Without Prior Notice Of A Right To Cure**

DaimlerChrysler argues that it had the authority under the contract's *ipso facto* clause to repossess the vehicle without giving the plaintiffs prior notice of a right to cure the default.  The plaintiffs counter that there was no default under the contract because they were current on their installment payments and that, even if the court were to find that there was a default, DaimlerChrysler violated W. Va. Code § 46A-2-106 by not giving the plaintiffs notice of a right to cure that default

before acting to repossess the vehicle.  I **FIND** that the plaintiffs were in default under the contract, and that DaimlerChrysler was not required to give the plaintiffs prior notice of a right to cure.

There is no statutory definition of what constitutes a default under a security agreement in either West Virginia's Uniform Commercial Code (W. Va. Code § 46-1-101 et seq.) or West Virginia's Consumer Credit and Protection Act ("C.C.P.A.") (W. Va. Code § 46A-1-101 et seq.). *See* W. Va. Code § 46-1-101 et seq.; W. Va. Code § 46A-1-101 et seq.  The security agreement itself therefore defines when a default occurs, provided that the definition is not unconscionable. *See* W. Va. Code § 46-9-201 ("a security agreement is effective according to its terms between the parties" subject to consumer protection laws or regulation).  Accordingly, the contract's *ipso facto* clause controls in defining a default under the contract.  It is undisputed that the debtor in this case filed for bankruptcy.  I **FIND** that the debtor and the co-plaintiff were in default under the contract, even though they were current on their installment payments.[6]

Having determined that the plaintiffs were in default under the contract's *ispo facto* clause, I must next decide whether § 46A-2-106 required DaimlerChrysler to provide the plaintiffs with prior notice of a right to cure before repossessing the vehicle.  DaimlerChrysler first argues that it was not required to provide such notice because § 46A-2-106 does not apply to the contract at issue.  DaimlerChrysler reasons that the contract is exempted by the phrase in § 46A-2-106 that requires notice for "[an] installment obligation or any other secured obligation *other than* with respect to a covenant to provide insurance for or otherwise to protect and preserve the property covered by a security interest or lease." W. Va. Code § 46A-2-106 (emphasis added).  DamilerChrysler claims

---

[6]  I note that "you" was defined both singularly and collectively, so both plaintiffs were in default under the contract even though only the debtor had filed for bankruptcy.

that it qualifies for that exception because it acted to protect and preserve the property after the debtor

filed for bankruptcy.  More specifically, it argues that when the debtor failed to choose to reaffirm

the debt or to redeem or surrender the vehicle, he failed to protect and preserve the property.  In

repossessing the vehicle, then, DaimlerChrysler was acting to preserve its right to a deficiency claim

and to avoid taking on the entire risk of the vehicle's depreciation.  Although this analysis is

somewhat attractive, I find that it is not an accurate interpretation of the language of § 46A-2-106,

which refers to "a covenant to provide insurance for or otherwise to protect and preserve the

property."  W. Va. Code § 46A-2-106.  Although DamilerChrysler may have been acting in this

instance under an *ipso facto* clause designed to protect and preserve the vehicle, the *retail contract*

*itself* was not a contract for insurance or a contract otherwise to protect and preserve the property.

It was a contract for sale.  *See* footnote 1 of this opinion.

To resolve whether § 46A-2-106 otherwise required DaimlerChrysler to provide notice of a

right to cure to the plaintiffs before it repossessed the vehicle, I look to the language of the statutes.

The West Virginia C.C.P.A. provides in relevant part:

> [A]fter a default on any installment obligation or any other secured obligation other
> than with respect to a covenant to provide insurance for or otherwise to protect and
> preserve the property covered by a security interest or lease, a creditor may not
> accelerate maturity of the unpaid balance of any such installment obligation or any
> other such secured obligation, commence any action or demand or take possession
> of collateral on account of default until ten days after notice has been given to the
> consumer of his or her right to cure such default. Until such period expires, the
> consumer shall have the right to cure any default by tendering the amount of all
> unpaid sums due at the time of the tender, without acceleration, plus any unpaid
> delinquency or deferral charges and by tendering any other performance necessary
> to cure such default. Any such cure shall restore a consumer to all his or her rights
> under the agreement the same as if there had been no default.

W. Va. Code § 46A-2-106.

-26-

In addition to analyzing the text of § 46A-2-106, I will interpret it in light of the two uniform consumer codes upon which it was based. Section 46A-2-106 is part of the C.C.P.A., W. Va. Code §§ 46A-1-101 et seq., which was enacted in 1974 and traces its origin to the Uniform Consumer Credit Code ("U.C.C.C.") and the National Consumer Act ("N.C.A.").[7] *See* Vincent Paul Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W. Va. L. Rev. 401, 411-14 (1975); *see also State ex rel. v. Bear, Stearns & Co.*, 618 S.E.2d 582, 586 (W. Va. 2005); *Orlando v. Finance One of West Virginia*, 369 S.E.2d 882, 885 (W.Va. 1988) (citing *Clendenin Lumber & Supply Co. v. Carpenter*, 305 S.E.2d 332, 336 n.4 (1983)). Although the state courts have not had much opportunity to interpret the scope of § 46A-2-106, the West Virginia Supreme Court of Appeals has employed the same technique of statutory interpretation as I apply here, that is, looking to the N.C.A. and U.C.C.C. for guidance in interpreting § 46A-2-106. *See Bear, Stearns & Co.*, 618 S.E.2d at 576-78; *Orlando*, 369 S.E.2d at 885. Moreover, despite the fact that the parties do not mention the N.C.A., they agree that the U.C.C.C. should control the court's interpretation of § 46A-2-106 in this case because that section reduced §§ 5.109-.111 of the U.C.C.C. into one comprehensive whole. (Def.'s Br. 15; Pls.' Br. 18). Accordingly, my analysis will encompass the relevant sections of both codes given their historic influence on § 46A-2-106, and the similarity I find in the language between the three codes. *See* Cardi, *supra*, at 411-14, 520; *see also Bear, Stearns & Co.*, 618 S.E.2d at 576-78; *Orlando*, 369 S.E.2d at 885.

---

[7] The U.C.C.C., first drafted by the National Conference on Uniform State Laws in 1968, and the N.C.A., published in 1970 by the National Consumer Law Center, were attempts at reforming consumer credit practices, with the U.C.C.C. largely seen as providing a more balanced approach compared to the N.C.A., which was drafted by those who considered the U.C.C.C. to be inadequate and which included more provisions intended to protect the consumer. Vincent Paul Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W. Va. L. Rev. 401, 409 (1975). The West Virginia legislature relied on both uniform codes in drafting the C.C.P.A.

I begin with § 5.109 of the U.C.C.C., which governed default and provided in relevant part:

> An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable only to the extent that:
>
> (1) the consumer fails to make a payment as required by agreement; or
>
> (2) the prospect of payment, performance, or realization of collateral is significantly impaired.

U.C.C.C. § 5.109.   The drafters of the U.C.C.C. considered the most common type of default to be a default resulting from the failure of a consumer to pay an installment as required, and the second (less-common) type of default that which was related to behavior of the consumer that endangered the prospect of a continuing relationship, like insolvency, illegal activity, or an impending removal of assets from the jurisdiction.  *Id.* § 5.109 cmt. 2.  This distinction is significant because the U.C.C.C. provided that *only* the failure to make an installment payment was capable of being cured. *See id.*  Accordingly, § 5.110 required notice to the consumer of the right to cure a default only when "a consumer has been in default . . . for failure to make a required payment . . . ."  *Id.* § 5.110. Similarly, § 5.111 of the U.C.C.C. provided that a creditor may not accelerate maturity of an obligation or take possession of secured goods without first providing notice of the consumer's right to cure "after a default only of the consumer's failure to make a required payment."  *Id.* § 5.111.  If a default occurred where "the prospect of payment, performance, or realization of collateral [was] significantly impaired," the U.C.C.C. did not require a creditor to provide notice of the consumer's right to cure because that default was incurable.

Section 2.203 of the N.C.A. is also relevant to my interpretation of § 46A-2-106 because it required the creditor to notify a consumer of the right to cure a default and directly influenced the drafting of § 46A-2-106.  *See* N.C.A. § 2.203; *see also* Cardi, *supra*, at 520 (cross-referencing N.C.A.

§ 2.203 to § 46A-2-106 in order to allow "the researcher to examine the drafter's comments which follow each code section showing the purpose and reasoning in drafting that particular provision" and to "allow[] some predictability as to how the courts will interpret [the West Virginia Act.]"). Section 2.203 provided that *only* nonpayment constitutes a default under a consumer credit transaction. N.C.A. § 2.203 cmt. 1. Section 2.203 also established a right to cure a default when a consumer fails to pay by giving the consumer an opportunity to pay the delinquent installment. *Id.* The N.C.A. further allowed the consumer to elect to extend the time of the installment payments, to refinance the entire unpaid balance, or to consolidate the unpaid balance with other debt. *See* § 2.203 and cmt. 2.

Both of the precursors to § 46A-2-106 therefore limited the consumer's right to cure (and required the creditor to give notice of that right) only to defaults where a consumer has not tendered an installment payment. In light of this background, I now return to the specific language of § 46A-2-106. Section 46A-2-106 applies to a consumer default "on any installment obligation" when the consumer has failed "to make a scheduled payment or otherwise perform pursuant to such a consumer credit sale, consumer lease or consumer loan . . . ." W. Va. Code § 46A-2-106. Furthermore, it provides that "the consumer shall have the right to cure any default by tendering the amount of all unpaid sums due at the time of the tender . . . and by tendering any other performance necessary to cure such default." *Id.* The statute's references to an "installment obligation," and to the right to cure in the context of tendering unpaid installment payments, clearly applies to a default in the context of failing to make payments, and not to a default upon bankruptcy under an *ipso facto* clause. I also find the use of the word "tender" to be instructive. Black's Law Dictionary defines "tender" as "an unconditional offer of money or performance to satisfy a debt or obligation." *Black's Law Dictionary* 1479 (7th ed. 1999). Similarly, Webster'sII New College Dictionary also defines "tender" in the

-29-

context of money or payment: "an offer of money or service in payment of an obligation; something

tendered, esp. money." *Webster'sII New College Dictionary* 1136 (1995).

In light of the clear language of § 46A-2-106, and of the clear language and intent of that

section's predecessor codes,  I **FIND** that § 46A-2-106 requires creditors to notify the consumer of

a right to cure *only* in the context of a default through a failure to pay under the contract. *Cf. Banks*

*v. Paul White Chevrolet, Inc.*, 629 S.E.2d 792, 795 (W. Va. 2006) (discussing § 46A-2-106 in the

context of a default through a failure to make installment payments).  Because the plaintiffs were

current in their installment payments, this default upon bankruptcy must be the type of default that

impairs the prospect of payment, performance, or realization of collateral in an ongoing contractual

relationship, and it cannot be cured.  Moreover, a notice of a right to cure the default in this case

would have been without legal effect because there was no way that the plaintiffs could have cured

the default.  Once the debtor had filed for bankruptcy, the plaintiffs were in default under the *ispo*

*facto* clause and they could not have acted to cure the bankruptcy filing.  *See* U.C.C.C. § 5.109 cmt.

2,§§ 5.110-5.111; *cf. Perry v. Wolaver*, No. 05-161-P-C, 2006 WL 1361223 (D. Me. May 16, 2006)

(finding that if a contact gives a party a right to cure a default within a certain number of days, but

the default is incurable, then the right to cure is illusory). I **FIND** that 46A-2-106 therefore did not

require DaimlerChrysler to provide notice of a right to cure before it repossessed the vehicle.

### IV. Conclusion

In conclusion, I **FIND** that the bankruptcy court had subject matter jurisdiction over the

adversary proceeding; I **FIND** that BAPCPA eliminated the "ride-through" option at least insofar as

it applies to this debtor; and I **FIND** that DaimlerChrysler was entitled under bankruptcy law and the

contract's *ipso facto* clause to repossess the plaintiffs' vehicle.  Moreover, I **FIND** that state law did

not require DaimlerChrysler to give the plaintiffs notice of a right to cure before it repossessed the vehicle.

It is, therefore, **ORDERED** that the order entered by the bankruptcy court is **REVERSED** and that this matter is **REMANDED** for further proceedings consistent with this opinion.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.  The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        September 29, 2008

Joseph R. Goodwin, Chief Judge

-31-